IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 24-cv-09867 <br><br> **Judge Andrea R. Wood** <br><br> **Magistrate Judge Jeffrey T. Gilbert** |

## DECLARATION OF PAUL VARLEY

I, Paul Varley, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am currently retained by Warner Bros. Entertainment Inc. ("Plaintiff" or "WBEI") as a consultant. I am knowledgeable about, or have access to WBEI's employees who have knowledge about or access to, business records concerning all aspects of the WBEI's brand protection operation including, but not limited to, its trademarks, copyrights, sales, licensees, online sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge save where otherwise stated.

3. WBEI is a subsidiary of Warners Bros. Discovery, Inc. ("WBD") and is headquartered in Burbank, California. WBEI owns the trademark rights asserted herein, which relate to the famous Harry Potter franchise.

1

4. Since the publication of *Harry Potter and the Sorcerer's Stone* in 1997 in the USA, the world has been captivated by the fictional, magical universe created by J.K. Rowling. The Harry Potter universe was brought to the silver screen by WBEI, starting with the first *Harry Potter* film, also titled *Harry Potter and the Sorcerer's Stone*, in 2001 in the USA. WBEI then produced seven more films tracking the entirety of J.K Rowling's *Harry Potter* book series. WBEI has also produced a multitude of related entertainment products, services, and experiences under the HARRY POTTER and/or WIZARDING WORLD banner that constitute a franchise of enormous breadth and value.

5. WBEI's *Harry Potter* films are among the most successful films of all time, with the worldwide release of the films grossing over seven billion dollars. The eighth and final film, *Harry Potter and the Deathly Hallows – Part 2,* grossed more than a billion dollars—one of only nine films in cinema history to accomplish this feat. The success of the Harry Potter franchise has led to seven major Harry Potter-themed permanent attractions around the world, including the Wizarding World of Harry Potter-themed lands at Universal Studios parks in Orlando, Florida; Hollywood, California; Beijing, China; Osaka, Japan; and The Making of Harry Potter Warner Bros. Studio Tour in Hollywood, California, Leavesden, England and Tokyo, Japan. WBEI has also produced a film series under the "*Fantastic Beasts*" banner, which is a spin-off prequel to the *Harry Potter* films. In addition, WBEI and/or its licensees offer a large stable of Harry Potter-themed video games, including *Hogwarts Legacy*, which was the bestselling video game worldwide of 2023.

6. WBEI markets and sells a variety of Harry Potter and Fantastic Beasts branded products, including bags, books, clothing, cosmetics, homeware, jewelry, toys, stationery, games,

2

and other merchandise bearing WBEI's trademarks (collectively, "HP Products"). HP Products have become enormously popular, driven by WBEI's quality standards and innovative designs. Among the purchasing public, HP Products are instantly recognizable as such. HP Products are distributed and sold to consumers by WBEI through authorized licensees and retail channels, including at various Harry Potter-themed parks and attractions, Harry Potter stores owned and/or controlled by WBEI and through WBEI's www.harrypottershop.com website.

7. Many trademarks deriving from the Harry Potter fictional universe are registered with the United States Patent and Trademark Office, and HP Products typically include at least one of WBEI's registered trademarks. WBEI uses its trademarks in connection with the marketing of HP Products, including the registered marks shown in the United States Registration Certificates attached hereto as **Exhibit 1** (collectively referred to as the "HP Trademarks"). The HP Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065.

8. The HP Trademarks are exclusive to WBEI and are displayed extensively on HP Products and in marketing and promotional materials. The HP Trademarks are also distinctive when applied to HP Products, signifying to the purchaser that the products come from WBEI and are manufactured to WBEI's quality standards. Whether WBEI manufactures the products itself or contracts with licensees to do so, WBEI has ensured that products bearing the HP Trademarks are manufactured to the highest quality standards.

9. WBEI's use of the HP Trademarks has built substantial goodwill in the HP Trademarks. As such, the HP Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The success of the

Harry Potter franchise, in addition to the marketing of HP Products, has enabled the Harry Potter brand to achieve widespread recognition and fame and has made the HP Trademarks some of the most well-known and world famous marks in the entertainment industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Harry Potter brand have made the HP Trademarks valuable assets of WBEI.

10. Products bearing the HP Trademarks have been the subject of substantial and continuous marketing and promotion. WBEI has marketed and promoted, and continues to market and promote, HP Products in the industry and to consumers through traditional print media, authorized retailers, social media sites, point of sale material, and WBEI's www.harry pottershop.com website.

11. WBEI has expended substantial time, money, and other resources advertising, promoting, and marketing HP Products. HP Products have also been the subject of extensive unsolicited publicity due to the success of the Harry Potter brand. As a result, products bearing the HP Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from WBEI. The HP Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the HP Trademarks is of immeasurable value to WBEI.

12. HP Products are sold only by WBEI or through authorized licensees and are recognized by the public as being exclusively associated with the Harry Potter brand.

13. The success of the Harry Potter brand has resulted in significant counterfeiting of the HP Trademarks. Because of this, WBEI has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in

4

proactive Internet sweeps. Recently, WBEI has identified many fully interactive e-commerce stores offering products using infringing and counterfeit versions of the HP Trademarks ("Unauthorized Products") on online marketplace platforms like Alibaba Group Holding, Ltd. ("Alibaba"), eBay, Inc. ("eBay"), Focus Technology Co., Ltd. ("MadeInChina"), and Context Logic, Inc. d/b/a Wish.com ("Wish"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States.

14. I perform, supervise, and/or direct investigations related to Internet-based infringement of the HP Trademarks for WBEI. Our investigation shows that Defendants are using the Seller Aliases to sell Unauthorized Products, from foreign jurisdictions to consumers in the U.S. and elsewhere. Working with WBEI, I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Unauthorized Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Unauthorized Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with WBEI and do not have the right or authority to use the HP Trademarks. Additionally, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

15. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping

5

to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Products to residents of Illinois.

16. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. WBEI has not licensed or authorized Defendants to use the HP Trademarks, and none of the Defendants are authorized retailers of HP Products.

17. Many Defendants also deceive unknowing consumers by using the HP Trademarks within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to HP Products. Other e-commerce stores operating under the Seller Aliases omit using the HP Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for HP Products.

18. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

19. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

20. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

21. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as WBEI, and recommend that e-commerce operators cease their infringing activity, liquidate their

7

associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

22. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite WBEI's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to WBEI.

23. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from WBEI have, jointly and severally, knowingly and willfully used and continue to use the HP Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

24. Monetary damages alone cannot adequately compensate WBEI for ongoing infringement because monetary damages fail to address the loss of control of and damage to WBEI's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to WBEI's reputation and goodwill by acts of infringement.

25. WBEI's goodwill and reputation are irreparably damaged when its trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by WBEI. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to WBEI's reputation

and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

26. WBEI is further irreparably harmed by the unauthorized use of the HP Trademarks because counterfeiters take away WBEI's ability to control the nature and quality of the Unauthorized Products. Loss of quality control over goods offered for sale or sold under the HP Trademarks and, in turn, loss of control over WBEI's reputation is neither calculable nor precisely compensable.

27. The use of the HP Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by WBEI is likely causing and will continue to cause consumer confusion, which weakens WBEI's brand recognition and reputation. Consumers who mistakenly believe that the Unauthorized Products originate from WBEI will come to believe that WBEI offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with HP Products, resulting in a loss or undermining of WBEI's reputation and goodwill. Indeed, there is damage to WBEI's reputation and goodwill even if a consumer knows the goods they are purchasing are counterfeit. Prospective consumers who see Unauthorized Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of WBEI and its trademarks. Such post-sale confusion results in damage to WBEI's reputation and correlates to a loss of unquantifiable future sales.

28. WBEI is further irreparably damaged due to a loss of exclusivity. HP Products are meant to be exclusive. WBEI's extensive marketing efforts and distribution of HP Products are aimed at growing and sustaining sales of HP Products. The HP Trademarks are distinctive and signify to consumers that the products originate from WBEI and are manufactured to

WBEI's high-quality standards. When counterfeiters use the HP Trademarks to offer for sale or sell goods without WBEI's authorization, the exclusivity of WBEI's products, as well as WBEI's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

29. WBEI will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October ___9th___, 2024, at London, United Kingdom.

_____
Paul Varley